IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

SHERRY L. THOMPSON,
    *et al.*,

    Plaintiffs,

       v.             CIVIL NO.: WDQ-13-1982

JP MORGAN CHASE BANK, N.A.

    Defendant.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Sherry L. Thompson and David F. Thompson ("the Thompsons") sued JP Morgan Chase Bank, N.A. ("Chase") for violating the Fair Debt Collection Procedures Act ("FDCPA"),[1] the Equal Credit Opportunity Act ("ECOA"),[2] the Maryland Consumer Protection Act ("MCPA"),[3] and the Maryland Mortgage Fraud Protection Act ("MMFPA"),[4] and for common law trespass. ECF No. 1. Pending is the defendant's motion to dismiss. ECF No. 7. No hearing is necessary. Local Rule 105.6 (D. Md. 2011). For the following reasons, the motion will be granted in part and denied in part.

---

[1] 15 U.S.C. § 1692 *et seq.*

[2] 15 U.S.C. § 1691 *et seq.*

[3] Md. Code Ann., Com. Law § 13-301 *et seq.* (West 2010).

[4] Md. Code Ann., Real Prop. § 7-401 *et seq.* (West 2010).

I.   Background[5]

In 2001 the Thompsons purchased real property located at 1417 Bittersweet Road, Severn, Maryland 21144 ("Bittersweet Road" or the "Property"). ECF No. 1 ¶ 9.  From 2001 until 2005 the Thompsons resided at Bittersweet Road. *Id*. ¶¶ 10, 12-13. During that time, the Thompsons "raised their family, celebrated holidays, birthdays, anniversaries[,] and engaged in family activities." *Id*. ¶ 10.  In 2005, financial difficulties forced the Thompsons to move in with Mrs. Thompson's parents and they placed Bittersweet Road on the market. *Id*. ¶¶ 12-13.  In January 2006, when it failed to sell, the Thompsons leased Bittersweet Road to tenants. *Id*. ¶ 17.[6]

On November 22, 2006, the Thompsons executed a Note in the amount of $361,500.00, secured by a Deed of Trust to Bittersweet Road.  ECF No. 1-9 at 3.  The Deed of Trust identified Chase as the lender.  ECF No. 1-13 at 1.  In 2007, the Thompsons

---

[5] For the motion to dismiss for failure to state a claim, the well-pled allegations in the complaint are accepted as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). In reviewing the motion to dismiss, the Court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Matters of public record include state court records and filings. *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 397 (4th Cir. 2006).

[6] The Thompsons contend that they are "not in the business of renting property" and that they "rented their primary residence to another party in order to attempt to save their property from foreclosure."  ECF No. 11 at 9-10.

purchased their current home at 49730 School House Lane,
Dameron, Maryland 20628. *Id.* ¶¶ 6, 24.

On July 1, 2009, the Thompsons failed to make the monthly
payment then due, and--on July 2, 2009--the loan went into
default. ECF No. 1-9 at 3; *see also* ECF No. 1 ¶ 109. On April
20, 2012, Chase sent the Thompsons a Notice of Intent to
Foreclose on the Property ("Foreclosure Notice"). ECF No. 1-11
at 1. The Foreclosure Notice identified Chase as the loan
servicer and Federal Home Loan Mortgage Corporation ("FHLMC") as
the secured party. *Id.* at 4.

On or around December 24, 2012, the Thompsons, through
their attorney, submitted a Request for Mortgage Assistance
("RMA") under the federal government's Home Affordable
Modification Program ("HAMP"). ECF No. 1 ¶ 99. In the RMA the
Thompsons requested a reduction in the amount of the principal
owing on the loan. *Id.* ¶¶ 106-109.[7] On February 15, 2013, Chase
denied the RMA for reason of incompleteness. *Id.* ¶ 105. On
March 2, 2013, Chase issued a letter informing the Thompsons
that a "recent inquiry about [their] loan" was "under review"

---

[7] On December 25, 2012, Chase requested additional documentation,
including IRS Form 4506T-EZ, proof of income, rental income
information, and non-borrower information. *Id.* ¶ 101. On
January 22, 2013, the Thompsons sent to Chase recent pay stubs,
a profit and loss statement pertaining to their business
operation, a rental agreement, and bank statements. *Id.* ¶ 102.

and to expect a timely response.  *Id.* ¶ 69; ECF No. 1-5 at 1.[8]

On March 5, 2013, Chase again wrote the Thompsons stating:

> We have received your request to be considered
> again for a mortgage modification. We are not
> able to approve your request. We can't begin to
> determine if you are eligible until we receive
> all the documents we need from you. If you have
> received this letter more than once, it's because
> we still need one or more of the documents listed
> below. ECF No. 1 ¶ 70.

The Thompsons allege that Chase had received a completed

application as of March 5, but they did not receive

subsequent notice from Chase regarding its decision on the

completed application.  *Id.* ¶¶ 71, 85.[9]  On March 29, 2013

Chase entered,[10] changed the locks on, and "winterized" the

---

[8] Exhibits attached to the Complaint show that the Thompsons sent
Chase additional documentation on February 27, 2013.  ECF No. 1-
2 at 7-9.

[9] Specifically, the Thompsons allege their application was
complete as of January 22, 2013.  ECF No. 1 ¶ 103.

[10] Chase claimed authority to enter under the terms of the Deed
of Trust on account of the Thompsons' failure to make loan
payments.  ECF Nos. 1-13 § 1, 7 at 13.  Section 9 of the Deed of
Trust provides, *inter alia*, that:
> If (a) Borrower fails to perform the covenants and
> agreements contained in this Security Instrument . . .
> then Lender may do and pay for whatever is reasonable
> or appropriate to protect Lender's interest in the
> Property and rights under this Security Instrument,
> including protecting and/or assessing the value of the
> Property, and securing and/or repairing the
> Property. . . .  Securing the [p]roperty includes, but
> is not limited to, entering the Property to make
> repairs, change locks, replace or board up doors and
> windows, drain water from pipes, eliminate building or

Property.  *Id.* ¶ 59.[11]

On July 9, 2013, the Thompsons filed suit alleging violations of the FDCPA (Counts One and Two), the MCPA (Count Three), the ECOA (Counts Four and Six), and the MMFPA (Count Five).  ECF No. 1.[12]  The Thompsons further allege that Chase committed trespass (Count Seven).  *Id.*  On September 27, 2013, Chase moved to dismiss the complaint.  ECF. No. 7.  On November 12, 2013, the Thompsons opposed the motion.  ECF No. 11.  On December 2, 2013, Chase replied.  ECF No. 12.

---

other code violations or dangerous conditions, and have utilities turned on or off.  ECF No. 7 at 13. The first provision of the Uniform Covenants contained in the Deed of Trust governs "Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges."  ECF No. 1-13 at 3-4.

[11] The Thompsons allege that Chase changed the locks and installed a lock box, placed "do not use tags on faucets," "[c]ut sheetrock out in the laundry room," and "[i]ssued a letter stating they could not turn on the water."  ECF No. 1 ¶¶ 59-61.

[12] This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  This Court has jurisdiction over non-federal claims under section 1367, which provides, *inter alia*, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

II.   Analysis

A. Legal Standard for Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003).  These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability;'" the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (*quoting Twombly*, 550 U.S. at 557).  The complaint must not only allege but also "show" that the plaintiff is entitled to relief.  *Id.* at 679 (internal quotation marks omitted).  "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief."  *Id.* (internal quotation marks and alteration omitted).

B. FDCPA Claims

Count One alleges that Chase violated § 1692c(a)(2)[13] of the FDCPA by "knowingly communicat[ing] with the Thompsons through direct written and oral communications" after the Thompsons had informed Chase they were represented by counsel.  ECF No. 1 ¶¶ 35-47.  Count Two alleges that Chase violated § 1692f[14] of the FDCPA by "deceptively us[ing] the [loan] modification process in order to seize control of the Bittersweet Road property" and "[i]n violation of the terms of the Deed of Trust" asserted "dominion and control over the property."  *Id.* ¶¶ 48-63.[15]

---

[13] Under § 1692c(a)(2), "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney."

[14] Under § 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

[15] The three elements of a FDCPA claim include: "(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an

Chase argues that the Thompsons' FDCPA claims fail because Chase is not a "debt collector" as it was not "attempting to collect a debt of another." ECF No. 7 at 5-6. Accordingly, Chase argues that it is not subject to the FDCPA. *Id.* at 6. The Thompsons respond that the Foreclosure Notice sent by Chase identified the secured party as FHLMC and Chase as the servicer, and, thus, Chase was collecting on the debt of another. ECF No. 11 at 12.

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." FDCPA § 1692a(6). Section 1692a(6) expressly exempts from the term "debt collector"

> any person collecting or attempting to collect any
> debt owed or due or asserted to be owed or due another
> to the extent such activity:
>
> (i)     is incidental to a bona fide fiduciary
>         obligation or a bona fide escrow arrangement;
>
> (ii)    concerns a debt which was originated by such
>         person;

---

act or omission prohibited by the FDCPA." *Willis v. Bank of Am. Corp.*, No. ELH-13-02615, 2014 U.S. Dist. LEXIS 105339 at *89 (D. Md. Aug. 1, 2014) (*quoting Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 333 (4th Cir. 2012)) (internal quotations omitted).

> (iii)    concerns a debt which was not in default at the
>          time it was obtained by such person . . . .
>          FDCPA § 1692a(6)(F).

Mortgage servicers are generally not considered debt collectors because they are not collecting on the debts of another. *See Allen v. Bank of Am., N.A.*, 933 F. Supp. 2d 716, 729 (D. Md. 2013). A servicer may be a debt collector, however, when it acquires a loan already in default. *See id.*; *Minson v. CitiMortgage, Inc.*, No. DKC 12-2233, 2013 WL 2383658 at *6 (D. Md. May 29, 2013); *Zervos v. Ocwen Loan Servicing, LLC*, No. 1:11-cv-03757-JKB, 2012 WL 1107689 at *3 (D. Md. Mar. 29, 2012).

To establish a FDCPA claim, plaintiffs must allege, *inter alia*, facts showing that "the defendant is a debt collector as defined by the FDCPA." *Willis v. Bank of Am. Corp.*, No. ELH-13-02615, 2014 U.S. Dist. LEXIS 105339 at *89 (D. Md. Aug. 1, 2014) (granting motion to dismiss when plaintiff alleged that defendant serviced the subject loan because servicers are not "debt collectors").[16] The Thompsons' Complaint alleges that

---

[16] The Thompsons argue that the Foreclosure Notice attached to the Complaint, which identifies FHLMC as the secured party, suggests that Chase was collecting on the debt of another-- FHLMC. *See* ECF No. 11 at 12. The Thompsons, though acknowledging that servicers are exempt from the definition of "debt collector," also argue that Chase "switched hats" from servicer to debt collector "at some point" while the loan was in default. *Id.* at 13. However, "[a] Rule 12(b)(6) motion tests the sufficiency of the *complaint*." *Bey v. Shapiro Brown & Alt, LLP*, No. PWG-13-1562, 2014 WL 661586 at *7 n.7 (D. Md. Feb. 20, 2014) (*citing Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060, 1063 (4th Cir. 1984)); *see also Mylan Labs., Inc. v. Akzo,*

Chase is a debt collector in a conclusionary fashion.   ECF No. 1 ¶¶ 37, 50.   Thus, the Thompsons have not alleged sufficient facts showing that Chase was a debt collector.

The Thompsons have requested leave to amend.   ECF No. 11 at 12.   They may do so only with the defendants' consent[17] or the Court's permission.   Fed. R. Civ. P. 15(a)(2); *Rice v. PNC Bank, N.A.*, No. PJM-10-0007, 2010 WL 1711496, at *2 (D. Md. Apr. 26, 2010).   Leave should be freely given when justice requires;[18] it "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."   *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (*quoting Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (internal quotations omitted)).   Here, there has been no showing of bad faith or futility.   Accordingly, Chase's motion to

---

*N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir.1984)).   "Therefore, to the extent the allegations and facts of Plaintiff's Opposition differ from the [Complaint], the Court must look to the sufficiency of the [Complaint]." *Bey*, 2014 WL 661586 at *7 n.7.

[17] The defendants request dismissal of the Thompsons' claims with prejudice.   ECF No. 12 at 3.

[18] Fed. R. Civ. P. 15(a)(2).

dismiss Counts One and Two will be granted without prejudice, and the Thompsons will be given leave to amend.

C. MCPA and MMFPA Claims

Count Three alleges that "representations made by Chase constitute deceptive and unfair trade practices" in violation of §§ 13-301(1) and (6) of the MCPA.[19]  ECF No. 1 ¶¶ 64-82.  Count Five alleged that Chase violated § 7-402[20] of the MMFPA by deliberately misrepresenting that the Thompsons were under consideration for a loan modification "with the intent that [the misrepresentations] be relied upon" and that "[t]he Thompsons reasonably relied on the deliberate misrepresentation," thereby suffering "the loss of their house."  *Id.* ¶¶ 86-94.

Chase argues that the Thompsons are ineligible for relief under either the MCPA or the MMFPA because they did not use Bittersweet Road primarily for personal purposes.  ECF No. 7 at 7.  Thus, Chase argues, the Thompsons are not "consumers" as defined by the MCPA, and the subject loan is not a "mortgage loan" as defined by the MMFPA. *Id.* at 8-9.  The Thompsons respond that the Property constituted a "personal asset

---

[19] Section 13-301(1) prohibits "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers."

[20] Section 7-402 prohibits "[m]ortgage fraud."

originally purchased as their family home" and that they "were not in the business of renting property."  ECF No. 11 at 10.

The MCPA prohibits "[u]nfair or deceptive trade practices," including any "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers."  Md. Code Ann., Com. Law § 13-301(1) (West 2010).  "Consumer" is defined, in pertinent part, as "an actual or prospective . . . recipient of . . . consumer credit."  Com. Law § 13-101 (c)(1).  "Consumer credit" is defined as credit that is "primarily for personal, household, family, or agricultural purposes." Com. Law § 13-101(d).[21]  To determine whether use is personal, household, family, or agricultural, courts assess the "primary" or "most significant use."  *Boatel Indus., Inc. v. Hester*, 77 Md. App. 284, 301-02 (Md. Ct. Spec. App. 1988) (*citing In re Bell*, 6 U.C.C.R.S. 740 (D. Colo. 1696); *In re Ware*, 59 B.R. 549 (N.D. Ohio 1986)) (yacht not "primarily personal" when purchased and titled in corporate name and purchaser expected business-related benefits from the transaction).

Section 7-402 of the MMFPA prohibits mortgage fraud. "Mortgage fraud" is defined as "any action by a person made with

---

[21] Title 13 of the Maryland Code is liberally construed.  *See* Md. Code Ann., Com. Law § 13-105 (West 2010).

the intent to defraud" and "that involves . . . [k]nowingly
making any deliberate misstatement, misrepresentation, or
omission during the mortgage lending process with the intent
that the misstatement, misrepresentation, or omission be relied
on by a mortgage lender . . . ."  Md. Code Ann., Real Prop.,
§ 7-401(d)(1) (West 2010).  "[M]ortgage lending process" is "the
process by which a person seeks or obtains a mortgage loan."
Real Prop. § 7-104(e)(1).  A "mortgage loan" is defined as "any
loan *primarily for personal, family, or household use* that is
secured by a mortgage, deed of trust, or other equivalent
consensual security interest on a dwelling or residential real
estate on which a dwelling is constructed or intended to be
constructed." Md. Code Ann., Fin. Inst., § 11-501(l) (West 2010)
(emphasis added); Real Prop. § 7-401(f).

Here, the Thompsons allege that Bittersweet Road was their
primary residence from 2001 until 2005.  ECF No. 1 ¶¶ 9-13.
During that time they "raised their family, celebrated holidays,
birthdays, anniversaries[,] and engaged in family activities."
*Id.* ¶ 10.  The Thompsons contend that they are "not in the
business of renting property" and that they "rented their
primary residence to another party in order to attempt to save
their property from foreclosure."  ECF No. 11 at 9-10.  Although
the evidence may ultimately show that the Thompsons did not use
Bittersweet Road for personal purposes, at this stage, the

13

Thompsons have plausibly alleged personal use.  Accordingly, the motion to dismiss Counts Three and Five will be denied.

D. ECOA Claims

Count Four alleges that Chase violated § 1691(d)(1)[22] of the ECOA when it failed to "notify the Thompsons of its actions on the [RMA]" if in fact "Chase was considering them for a modification."  ECF No. 1 ¶¶ 83-85.  Count Six alleges that Chase violated § 1691(d)(2)[23] of the ECOA by failing to provide the Thompsons with a "statement of reason" in its February 15, 2013 denial of the RMA.  *Id.* ¶¶ 95-119.

a. 15 U.S.C. § 1691(d)(1)

Chase argues that the Thompsons' claim fails under ECOA § 1961(d)(1) because Chase notified the Thompsons of the RMA denial 24 days after receiving the completed application, within the required 30-day timeframe.  ECF No. 7 at 10.  The Thompsons assert that Chase has "never filed a timely response" because subsequent letters from Chase indicated that the RMA was still under review.  ECF No. 11 at 6-7, n. 2; *see also* ECF No. 1 ¶ 85.

_____

[22] Under § 1691(d)(1), "[w]ithin thirty days (or such longer reasonable time as specified in regulations of the Bureau for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application."

[23] Under § 1691(d)(2), "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor."

Section 1691(d)(1) requires that "[w]ithin thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action taken on the application." When an application is incomplete, paragraph (c) of Regulation B implementing the ECOA provides that "the creditor shall notify the applicant either: (i) Of action taken, in accordance with paragraph (a) of this section; or (ii) Of the incompleteness, in accordance with paragraph (c)(2) of this section." 12 C.F.R. § 202.9(c)(1). "If the applicant supplies the requested information within the designated time period, the creditor shall take action on the application and notify the applicant in accordance with paragraph (a) of this section." 12 C.F.R. § 202.9(c)(2).[24]

---

[24] Paragraph (c)(2) states in full that

> If additional information is needed from an applicant, the creditor shall send a written notice to the applicant specifying the information needed, designating a reasonable period of time for the applicant to provide the information, and informing the applicant that failure to provide the information requested will result in no further consideration being given to the application. The creditor shall have no further obligation under this section if the applicant fails to respond within the designated time period. If the applicant supplies the requested information within the designated time period, the creditor shall take action on the application and notify the applicant in accordance with paragraph (a) of this section. 12 C.F.R. § 202.9(c)(2).

Here, the Thompsons allege that they submitted a complete application on January 22, 2013.[25]  ECF No. 1 ¶ 103. They acknowledge that--on February 15, 2013--Chase denied the application for reason of incompleteness.  *Id.* ¶ 105; ECF No. 11 at 6.  The Thompsons further allege, however, that subsequent letters from Chase indicated that Chase was still completing its RMA review.[26]  ECF No. 1 ¶¶ 84-85.  On March 2, 2013, Chase sent the Thompsons a letter stating that a "recent inquiry about [their] loan" was "under review" and that they would receive "a response in a timely manner."  *Id.* ¶ 69; ECF No. 1-5 at 1. Then, on March 5, 2013, Chase again wrote the Thompsons a letter stating:

> We have received your request to be considered
> again for a mortgage modification. We are not
> able to approve your request. We can't begin to
> determine if you are eligible until we receive
> all the documents we need from you. If you have
> received this letter more than once, it's because

---

[25] The Thompsons submitted the initial RMA on or around December 21, 2012, and followed up with additional information on December 24, 2012.  *See* ECF Nos. 1-2 at 1; *see also* ECF No. 1 ¶ 99. On December 25, 2012, Chase requested additional documentation, including IRS Form 4506T-EZ, proof of income, rental income information, and non-borrower information.  *Id.* ¶ 101.  On January 22, 2013, the Thompsons sent to Chase recent pay stubs, a profit and loss statement pertaining to their business operation, a rental agreement, and bank statements. *Id.* ¶ 102.

[26] Exhibits attached to the Complaint show that the Thompsons sent Chase additional documentation on February 27, 2013.  ECF No. 1-2 at 7-9.

> we still need one or more of the documents listed
> below.  ECF No. 1 ¶ 70.

The Thompsons allege that they had submitted a complete
application--notwithstanding Chase's contention that the
application was incomplete--as of March 5, 2013 and that "Chase
did not notify the Thompsons of its actions on the application."
*See id.* ¶¶ 71, 85.  Thus, the Thompsons have alleged facts
showing that Chase was required to take action on the completed
application.  Accordingly, Chase's motion to dismiss Count Four
will be denied.

>        b. 15 U.S.C. § 1691(d)(2)

Chase argues that the Thompsons were not entitled to a
statement of reasons for the RMA denial because Chase's decision
did not constitute an "adverse action," as the Thompsons "were
delinquent on the loan."  ECF No. 7 at 10-11.  The Thompsons
contend that they were not seeking additional credit--but rather
a principal reduction--and thus the denial was an adverse action
despite their delinquency.  ECF No. 1 ¶¶ 106-109.

Section 1692(d)(2) states that "[e]ach applicant against
whom adverse action is taken shall be entitled to a statement of
reasons for such action from the creditor."  The term "adverse
action" includes "[a] refusal to grant credit in substantially
the amount or on substantially the terms requested in an
application unless the creditor makes a counteroffer . . . ."

17

12 C.F.R. § 202.9(c)(1)(i).  It does not include, *inter alia*, "a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit."  ECOA § 1692(d)(6); "Any action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account" is not an "adverse action."  12 C.F.R. § 202.2(c)(2)(ii).

Here, the Thompsons allege they were delinquent on the loan for which they requested the RMA.  ECF No. 1 ¶ 109.  Thus, the request to modify the loan by reducing the amount of principal owed on the loan was not an "adverse action" requiring a statement of reason from Chase.[27] *See Casey v. Litton Loan Servicing LP*, No. RDB-11-0787, 2012 WL 502886 at *4, 16-18 (D. Md. Feb. 14, 2012) (dismissing ECOA claim when delinquent borrower requesting refinancing did not receive a statement of reason for denial).  Accordingly, the Thompsons have failed to state a claim under ECOA § 1691(d)(2) and Chase's motion to dismiss Count Six will be granted.

---

[27] Even if the denial did constitute an adverse action, however, in the February 15 and March 5, 2013 letters Chase stated a reason for the denial: incomplete documentation.  *See* ECF Nos. 1 ¶ 70, 7 at 6, 1-4 at 1.

E. Trespass Claim

Count Seven alleges that Chase trespassed on the Property in violation of the Deed of Trust. ECF No. 1 ¶¶ 122-24. The Thompsons argue that Chase had a "limited license to enter the property in order to protect the property if abandoned," and that "[t]he property was not abandoned." ECF No. 1 ¶¶ 122-23. Chase argues that it did not trespass on the Property because it acted in compliance with one of two provisions in the Deed of Trust granting the lender the right to enter the Property. ECF No. 7 at 13. Chase contends that it had contractual authority to enter the Property under § 9(a) of the Deed of Trust because the Thompsons were delinquent on the loan. *Id.*

To state a claim of trespass, plaintiffs must allege "(1) an interference with a possessory interest in [their] property; (2) through the defendant's physical act or force against that property; (3) which was executed without [their] consent." *Royal Investment Grp., LLC v. Wang*, 961 A.2d 665, 688 (Md. App. 2008) (quoting *Ford v. Baltimore City Sheriff's Office*, 149 Md. App. 107, 129 (2002)). Consent can be provided by a deed of trust. *See, e.g., McCray v. Specialized Loan Servicing*, No. RDB-12-02200, 2013 WL 1316341 at *5 (D. Md. Mar. 28, 2013).[28]

---

[28] In *McCray*, the plaintiff alleged that the defendant failed to give proper notice under the deed of trust of its intent to secure the property, and then trespassed when it did so. *See McCray v. Specialized Loan Servicing*, No. RDB-12-02200, 2013 WL

Here, the Thompsons "were admittedly delinquent" on the loan they sought to modify.  ECF No. 1 ¶ 109.[29]  Thus, the Thompsons failed to perform the first covenant[30] of the Deed of Trust requiring timely payment.  ECF No. 1-13 at 3-4.  Section 9 of the Deed of Trust permits the lender to enter the property when the borrower has defaulted on the loan secured by the Deed of Trust.  ECF No. 7 at 13.  The Thompsons' delinquency triggered Chase's right to enter the property under the first provision of § 9 to do "whatever is reasonable or appropriate" to secure its interest in the Property, including "securing and/or repairing the Property."  ECF No. 11 at 5.[31]  Accordingly, the Thompsons' trespass claim--Count Seven--must be dismissed.

---

1316341 at *2 (D. Md. Mar. 28, 2013).  In dismissing the case with prejudice, the Court relied upon the fact that the plaintiff was in default, thus granting defendant the right under § 9(a) of the Deed of Trust to secure the property.  *See id.* at *5.

[29] Moreover, plaintiffs' exhibits included an affidavit executed on behalf of Chase that the loan went into default as of July 2, 2009.  See ECF No. 1-9 at 3.

[30] The first provision of the Uniform Covenants contained in the Deed of Trust governs "Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges."  ECF No. 1-13 at 3-4.

[31] Section 9 states that "[s]ecuring the [p]roperty includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off."  ECF No. 11 at 5. Here, the Thompsons allege that Chase changed the locks and installed a lock box, placed "do not use tags on faucets,"

III. Conclusion

For the reasons stated above, the defendants' motion to dismiss will be granted in part and denied in part.


_____8/27/14_____

Date


William D. Quarles, Jr.
United States District Judge

---

"[c]ut sheetrock out in the laundry room," and "[i]ssued a letter stating they could not turn on the water."  ECF No. 1 ¶¶ 59-61.